1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10   FRESH PAC INTERNATIONAL,              CASE NO. 16cv539-GPC(BLM)
     INC., a California corporation,
11                                         **ORDER GRANTING**
                                           **DEFENDANTS' MOTION TO**
12                          Plaintiff,     **DISMISS FOR LACK OF**
                                           **PERSONAL JURISDICTION AND**
13        v.                               **ON FORUM NON CONVENIENS**

14   GOWAN GROUP, an unknown form
     of business entity; GOWAN             [Dkt. No. 8.]
15   SEMILLAS S.A. de CV., a Mexican
     corporation; DUNE COMPANY
16   MEXICALI S. De R.L. de C.V., a
     Mexican corporation,
17
                            Defendants.
18

19        Before the Court is Defendants' motion to dismiss for lack of personal

20   jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) and for lack

21   of venue pursuant to Rule 12(b)(3)[1]. (Dkt. No. 8.)  Plaintiff filed an opposition, and

22   Defendants filed a reply. (Dkt. Nos. 11, 15.)  Based on the reasoning below, the Court

23   GRANTS Defendants' motion to dismiss for lack of personal jurisdiction and on forum

24   non conveniens.

25

26   _____

27       [1]The Court notes that a motion to dismiss based on forum non conveniens is not
     the same as a motion to dismiss for improper venue under Rule 12(b)(3).  See
28   American Dredging Co. v. Miller, 510 U.S. 443, 448 (1994) (court may dismiss case
     on ground of forum non conveniens even if jurisdiction and venue are established).
     Here, Defendants move to dismiss on the grounds of forum non conveniens.

1

**Background**

2      On March 3, 2016, Plaintiff Fresh Pac International, Inc., ("Plaintiff" or "Fresh

3 Pac") filed a Complaint against Defendants Gowan Semillas S.A. de C.V. ("Gowan

4 Semillas") and Dune Company Mexicali S. De R.L. de C.V. ("Dune Mexicali")  or

5 (collectively "Defendants")[2] (Dkt. No. 1.)  The Complaint alleges causes of action for

6 rescission based upon failure of consideration; breach of verbal contract; restitution

7 based upon unjust enrichment; quasi-contract based upon promissory estoppel;

8 common count for money had and received; and unfair competition pursuant to

9 California Business & Professions Code section 17200.  (Id.)  On June 13, 2016,

10 Defendants filed a motion to dismiss for lack of personal jurisdiction and for lack of

11 venue. (Dkt. No. 8.)  An opposition was filed on July 29, 2016. (Dkt. No. 11.)  A reply

12 was filed on August 16, 2016.  (Dkt. No. 15.)

13

**Background**

14      Plaintiff is the exclusive distributor of agricultural produce grown in Mexico by

15 a grower, Agricola Colonet, S.A. de C.V. ("Agricola Colonet").  (Dkt. No. 1. Compl.

16 ¶ 8.)  Plaintiff relies on this Mexican grown produce to supports its business and

17 distribution services in the United States.  (Id.)  Plaintiff also distributes for other

18 agricultural growers and has independently conducted business with Defendants

19 purchasing seed and fertilizer for use with other Mexican growers.  (Id.)

20      Defendants are Mexican corporations with their principal place of business in

21 Mexicali, Baja California, Mexico. (Dkt. No. 1, Compl. ¶¶ 4-5.)  Gowan Semillas is

22 in the business of providing seed for use in agricultural operations.  (Id. ¶ 4.)  Dune

23 Mexicali is in the business of providing fertilizer and related products for use in

24 agricultural operations.  (Id. ¶ 5.)  Both Defendants have common ownership and/or

25 officers.  (Id. ¶ 6.)

26      Starting in January 2011, Agricola Colonet purchased seed and fertilizer from

27

28      [2]Plaintiff also alleged claims against the Gowan Group, an unknown form of business entity.  (Dkt. No. 1.)  On June 1, 2016, Plaintiff filed a notice of voluntary dismissal as to the Gowan Group.  (Dkt. No. 7.)

[16cv539-GPC(BLM)]

Defendants for use in its agricultural growing operations. (Id. ¶ 9.) Agricola Colonet was unable to pay in full the various suppliers, which included Defendants, and incurred debt in excess of $3.1 million. (Id.)

Around mid-January 2013, Plaintiff's principal, Jay Kawano ("Kawano"), met with Defendants' "Mexico Business Manager" at Plaintiff's offices located in Oceanside, California to discuss a resolution of the debt that Agricola Colonet owed to Defendants. (Id. ¶ 10.) It was agreed that all parties would benefit from the continued business of Agricola Colonet. (Id.) Defendants requested that Plaintiff guarantee the payment of the debt in writing but Kawano refused to do so because he had no legal obligation for the debt. (Id.)

In order to avoid the high cost of litigation, "the parties verbally agreed that (1) FRESH PAC would purchase seed/fertilizer products from Defendants at a discounted rate, with the discounted percentage amount (10%) credited to the outstanding Agricola Colonet debt, and (2) FRESH PAC would market and distribute the Agricola Colonet produce and pay a portion of the per box price of the agricultural produce sold toward satisfaction of the outstanding Agricola Colonet debt (beginning at the rate of 25 cents per box sold). The parties further agreed that such payments would continue until the Agricola Colonet debt was satisfied in full. In exchange for the payments by Plaintiff to Defendants, Defendants agreed that they would not take any other action to formally collect on the Agricola Colonet debt." (Id. ¶ 11.)

Around February 13, 2013, Plaintiff made the first payment pursuant to an invoice for products from Gowan Semillas in the amount of $455,175.00 (Id. ¶ 12.) 10% of the invoice (or $45,517.50) was credited to Agricola Colonet's account. (Id.) From February 2013 through December 2014, Plaintiff paid Defendants the total sum of $1,259,284.42. (Id. ¶ 13.) On December 27, 2014, Plaintiff made the last payment that was accepted by Defendants. (Id. ¶ 14.) During the months preceding this date, Defendants continued to insist that Plaintiff execute a written guaranty of the Agricola Colonet debt despite the parties' verbal agreement. (Id.) This resulted in Defendants'

breach of the parties' verbal agreement at the end of December 2014 by their refusal to accept further payments pursuant to the parties' oral agreement.  (Id.)  Then, Defendants initiated ligtiation in Mexico against Agricola Colonet and claim that Plaintiff and its principal have a legal obligation for the debt. (Id. ¶ 18.)

**Discussion**

**A.    Legal Standard on Personal Jurisdiction**

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." In re Western States Wholesale Natural Gas Antitrust Litigation v. Oneok, Inc., 715 F.3d 716, 741 (9th Cir. 2013).  If the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss."  Bryton Purcell LLP v. Recordon & Recordon, 575 F.3d 981, 985 (9th Cir. 2009).  On a prima facie showing,  the court resolves all contested facts in favor of the non-moving party.  In re Western States, 715 F.3d at 741;  AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996) (if conflicted facts are contained in the parties' affidavits, the facts must be resolved in favor of the plaintiff for purposes of determining whether a prima facie case of personal jurisdiction has been established.)  At the same time, however, the plaintiff cannot establish jurisdiction by alleging bare jurisdictionally-triggering facts without  providing some evidence of their existence.  Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977).

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." Marvix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (citations omitted).  California's long-arm statute is "coextensive with the outer limits of due process under the state and federal constitutions, as those limits have been defined by the United States Supreme Court." Republic Int'l Corp. v.  Amco Eng'rs, Inc., 516 F.2d 161, 167 (9th Cir. 1976) (quoting Threlkeld v. Tucker, 496 F.2d 1101, 1103 (9th Cir. 1974)).  As such, the

1    Court need only consider the requirements of due process.  Due process requires that
2    nonresident defendants have "minimum contact" with the forum state "such that the
3    maintenance of the suit does not offend traditional notions of fair play and substantial
4    justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).   Personal
5    jurisdiction can be either "general" or "specific."  See Helicopteros Nacionales de
6    Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).

7    **B.     General Personal Jurisdiction over Defendants**

8         Defendants argue that this Court lacks general personal jurisdiction over them
9    because a single contact where an alleged contract was agreed upon within California,
10   as alleged in the Complaint, does not constitute contacts that are substantial,
11   continuous or systematic in nature.  Instead, Defendants argue that they are Mexican
12   corporations solely operating and located in Mexicali with no business operations in
13   California.

14        In response, Plaintiff asserts that the Court has general personal jurisdiction over
15   Defendants because they had up to eighteen meetings in California, representatives
16   and/or agents who acted on behalf of Defendants reside or are domiciled in California,
17   and Plaintiff was a direct customer of Defendants with over 200 individual orders of
18   seed/fertilizer generating over $5.0 million in revenue for Defendants. (Dkt. No. 11-1,
19   Kawano Decl. ¶ 23.)

20        "A court may assert general jurisdiction over foreign (sister-state or
21   foreign-country) corporations to hear any and all claims against them when their
22   affiliations with the State are so 'continuous and systematic' as to render them
23   essentially at home in the forum State."  Goodyear  Dunlop Tires Operations, S.A. v.
24   Brown, 131 S. Ct. 2846, 2851 (2011).  As to corporations, "the place of incorporation
25   and principal place of business are 'paradig[m] . . . bases for general jurisdiction."
26   Daimler AG v. Bauman, 134 S. Ct. 746, 760 (2014) (citation omitted).  "A corporation
27   that operates in many places can scarcely be deemed at home in all of them,
28   [o]therwise, 'at home' would be synonymous with 'doing business.'"  Id. at 762 n. 20.

[16cv539-GPC(BLM)]

Outside of these paradigm bases, only "in an exceptional case" should a court find a corporation's operations in the forum to be "so substantial and of such a nature as to render the corporation at home in that State." Id. at 761 n.19. Exceptional circumstances, as noted in Daimler, do not exist merely whenever "a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is only whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" Id. at 761 (quoting Goodyear, 131 S. Ct. at 2851). The Supreme Court in Daimler AG cited to its decision in Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437 (1952) to exemplify what constitutes "exceptional circumstances." Id. There, the Court held that an Ohio court could exert general jurisdiction over an out-of-state corporation located in the Philippines, because Ohio was the corporations's principal, albeit temporary, place of business during the war when the Japanese occupied the Philippines. Id. at 447-48.

Courts have noted that Daimler raised the bar to establish general personal jurisdiction. See Kipp v. Ski Enter. Corp. of Wisconsin, 783 F.3d 695, 698 (7th Cir. 2015) ("Daimler raised the bar for general jurisdiction and "require[s] more than the 'substantial, continuous, and systematic course of business' that was once thought to suffice."); Amiri v. DynCorp Int'l, Inc., Case No. 14cv3333 SC, 2015 WL 166910, at *3 (N.D. Cal. Jan. 13, 2015) (noting that "in the overwhelming majority of cases there will be no occasion to explore whether a Perkins-type exception might apply").

Here, Defendants are Mexican corporations located in Mexicali, Mexico. (Dkt. No. 8-5, Castillo Decl. ¶¶ 7-9, 12-14.) Gowan Semillas, incorporated on February 12, 2014, and Dune Mexicali, incorporated on January 25, 2008, are both corporations formed and existing under the laws of Mexico. (Id. ¶¶ 5, 10.) Gowan Semillas and Dune Mexicali maintain a business office in Mexicali, Mexico and do not maintain any business operations in California. (Id. ¶¶ 7, 12.)

Plaintiff argues that attending multiple meetings in California, the fact that

Defendants' representatives reside or are domiciled in California and being a direct buyer of Defendants are sufficient contacts to confer general personal jurisdiction over Defendants.  However, such contacts do not amount to being "at home" in California to establish general personal jurisdiction over Defendants.  See Corcoran v. CVS Health Corp., – F. Supp. 3d – 2016 WL 948880, at *5 (N.D. Cal. Mar. 14, 2016) (no general jurisdiction where Plaintiffs contend that CVS Health had a substantial number of pharmacies, maintained two distributions centers and solicited employees in California); Martinez v. Aero Caribbean, 764 F.3d 1062, 1070 (9th Cir. 2014) cert. denied, – U.S. –, 135 S. Ct. 2310 (2015) (affirming district court finding of no general jurisdiction over defendant who had contracts with California companies worth between $225 and $450 million, sent employees to California, and advertised in trade publications with distribution in California); Cahen v. Toyota Motor Corp., 147 F. Supp. 3d 955, 964 (N.D. Cal. 2015) (no general jurisdiction with respect to defendant car manufacturer who had 302 employees in California and over one hundred thousand cars registered in California in the past year).

Defendants are incorporated in Mexico, not California, and therefore, their contacts with California are not "continuous and systematic." See Daimler AG, 134 S. Ct at 760.  In addition, Plaintiff has not demonstrated any "exceptional circumstances" to render their contacts to essentially be "at home" in California to warrant general personal jurisdiction over Defendants.  Thus, the Court does not have general personal jurisdiction over Defendants.

## C.    Specific Personal Jurisdiction over Defendants

Defendants next argue that this Court lacks specific jurisdiction over them because a single meeting or even a handful of meetings is not sufficient to establish specific personal jurisdiction.  In response, Plaintiff contends that this Court may assert specific personal jurisdiction over Defendants because they purposefully availed themselves to the benefits of this forum.

Specific jurisdiction exists when a case "aris[es] out of or relate[s] to the

defendant's contacts with the forum." Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 414 n. 8. The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation." Walden v. Riore, 134 S. Ct. 1115, 1121 (2014). Specific jurisdiction is limited to ruling on "issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear Dunlop Tires, 131 S. Ct. at 2851 (citation omitted).

The Ninth Circuit conducts a three-prong test to determine whether a non-resident defendant is subject to specific personal jurisdiction,

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)). "A purposeful availment analysis is most often used in suits sounding in contract," while a "purposeful direction analysis . . . is most often used in suits sounding in tort." Id. "[P]urposeful availment" asks whether a defendant has "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Picot v. Weston, 780 F.3d 1206, 1212 (9th Cir. 2015) (quoting Schwarzenegger, 374 F.3d at 802). For tort claims, a "purposeful direction" test looks "to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." Id. (citing Schwarzenegger, 374 F.3d at 802-03). The plaintiff bears the burden of satisfying the first two prongs and then the burden shifts to the defendant to make a "compelling case" that the third part has not been met. Schwarzenegger, 374 F.3d at 802. "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006) (internal citations and

quotations omitted).

Here, Defendants argue and Plaintiff do not dispute that Plaintiffs' causes of action arise out of an alleged oral contract between Plaintiff and Defendants and sound in contract; therefore, the purposeful availment analysis applies.

### 1.   Purposeful Availment

"'Purposeful availment' ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . 'or of the 'unilateral activity of another party or a third person'". Burger King Corp., 471 U.S. at 475 (internal citations omitted).  A defendant has purposely availed himself of the benefits of a forum if he has deliberately "engaged in significant activities within a State or has created 'continuing obligations' between himself and the residents of the forum." Id. at 475-76.

A contract, itself, is not sufficient to establish sufficient minimum contacts in the forum state to exercise personal jurisdiction over a party. Id. at 478.  To assess whether there are sufficient minimum contacts, courts should consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Id. at 479.  A defendant must have "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." Picot, 780 F.3d at 1211 (quoting Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990)).

In Gray, the Ninth Circuit held that the contacts were not sufficient to establish that the defendants purposefully availed themselves to the benefits and protection of the forum's law.  Gray & Co. v. Firstenberg Machinery Co., Inc., 913 F.2d 758,761 (9th Cir. 1990).  Gray concerned a purchase order contract with an invoice, not a formal written contract, which was  consummated with a few phone calls that the plaintiff initiated.  Id. at 760-61.  The only contacts with the forum, Oregon, was a response by the plaintiff's solicitation for the product, telephone calls, mailing the invoice to plaintiff and receipt of payment from the plaintiff.  Id.  The sale did not

1  contemplate a continuing relationship between the parties; in fact, invoice stated "as

2  is, where is" indicating the defendant did not want responsibility for the product after

3  the sale. Id. at 761.

4      Picot involved an oral agreement formed in Michigan where it was understood

5  the defendant would perform the work and discharge most of his contractual duties.

6  Picot, 780 F.3d at 1212. The court explained that while the plaintiff, a co-party to the

7  agreement, had ties in California, the forum states, the jurisdictional question is limited

8  to looking at contacts that "proximately result from the actions by the defendant

9  himself" and not those of the plaintiffs. Id. at 1213. The Ninth Circuit held that the

10  defendants did not purposefully availed himself due to the limited nature of the

11  transaction in issue. Id. The court noted that the defendant only traveled to California

12  two times but it was at the plaintiffs' request. An oral agreement formed outside the

13  forum and two trips to California did not create sufficient minimum contacts to subject

14  him to personal jurisdiction. Id. at 1213 (transitory presence in the forum state is

15  relevant but only if it was meaningful enough to create a substantial connection with

16  the forum State).

17      In January 2013, Kawano, Fresh Pac's President, and two representatives of

18  Defendants, Francisco Llaguno, now a former employee of Gowan Semillas and Dune

19  Mexicali, and Mark Jessen[3] met at Plaintiff's offices located in Oceanside, California

20  and the parties agreed to the general terms of an oral agreement at this meeting. (Dkt.

21  No. 11-1, Kawano Decl. ¶ 6.) At the meeting, he parties agreed that

22      (1) FRESHPAC would purchase seed and fertilizer directly from the
23      Defendants and instead of taking the customary 10% discount,
       Defendants would apply the 10% discount to the reduction of
24      Agricola's debt, and (2) once agricultural produce was ready for
       distribution, FRESH PAC would remit to Defendants an agreed upon
25      percentage of the sales proceeds of the agricultural produce (at a
       percentage to be agreed upon, originally discussed as 25 cents per box
26      sold).

27  (Id.) Negotiations continued during January through April 2013. (Id.)

28      [3]Neither party has stated what Mark Jesson's position is at Defendants' corporation.

Kawano stated he had about six meeting in California with Llaguno in Oceanside and one meeting in Del Mar, California during January through April 2013. (Id. ¶ 11.) Kawano also attaches emails between him and Llaguno that address the Agricola debt and payments made by Plaintiff. (Dkt. No. 11-1, Kawano Decl., Exs. 3, 7.) Plaintiff became a direct customer of Defendants by placing orders and paying for fertilizer and seed. (Id. ¶ 13.)

Kawano also met with Mark Jesson, a representative of Defendants, who lives or has a home in La Jolla, California, about two to three times in California. (Id. ¶¶ 14-17.) Emails show that Jesson sought meetings with Kawano in La Jolla and Otay Mesa, California and appear to address issues related to a financial arrangement between Plaintiff, Agricola and Defendants. (Id., Exs. 8, 9, 10.)

Adrian Castillo took over for Francisco Llaguno on August 1, 2013. (Id. ¶ 18.) Castillo came to Oceanside two times. Around August 26, 2013, Castillo came to Plaintiff's offices in Oceanside and met with the office manager and left a contract for Plaintiff to sign that would obligate it for repayment of Agricola's debt. (Id. ¶ 19.) Plaintiff refused because it was not legally obligated for Agricola's debt. (Id.) Castillo continued to attempt to renegotiate the oral agreement. (Id. ¶ 20; id., Ex. 11.) Castillo eventually agreed to come to Oceanside on September 24, 2013. (Id.) On November 5, 2013, Castillo and Steve Slocum, both acting on behalf of Defendants came to Oceanside to meet concerning the Agricola debt. (Id.)

Steve Slocum worked in the Salinas office of Gowan Seed and was an "owner" of Gowan Seed and the manager in charge of Defendants. (Id. ¶ 21.) Kawano met with Slocum about five to six times in Oceanside when he would travel down from the Salinas office during November and December 2014 after discussions with Castillo failed. (Id. 22; id., Ex. 14.)

As a result of the terms of the oral contract, Plaintiff placed its first seed and fertilizer order in February 2013 and paid $455,175, with $45,517.50 being applied to Agricola's debt reduction. (Dkt. No. 11-1, Kawano Decl. ¶ 6.) From February 13,

2013 through December 27, 2014, Plaintiff submitted and Defendants fulfilled over 200 purchase orders and invoices representing over $5.9 million in retail sales. (Id. ¶ 23.) Pursuant to the oral agreement, Plaintiff also sold and distributed over 1 million boxes of Agricola's agricultural produce in California. (Id. ¶ 24.) From February 2013 through December 2014, Plaintiff made payments which reduced Agricola's debt by over $1.2 million pursuant to the oral contract. (Id. ¶ 7.)

The facts presented demonstrate that Defendants purposely availed themselves to the benefits of doing business in California. The oral contract was agreed upon in Oceanside, California. It is not disputed that multiple meetings were held between Defendants' representatives and Plaintiff's representatives in California to discuss the financial arrangement between Plaintiff, Defendants and Agricola Colonet. Jesson sought out at least two meetings in California with Kawano to address the financial arrangement between the parties. Castillo visited Plaintiffs' offices in Oceanside to have Plaintiff sign a contract to obligate it to repay Agricola's debt. Furthermore, due to the verbal contract between the two parties, Plaintiff and Defendants established a direct buyer/seller relationship between February 13, 2013 through December 27, 2014 which involved over 200 purchase orders and $5.9 million in retail sales.

Defendants' representatives took affirmative acts by seeking out meetings in California, and the oral agreement formed in the forum state created a continuing obligation between Defendants and Plaintiff, a resident of the forum state, by establishing a direct buyer/seller relationship from February 2013 to December 2014 resulting in $5.9 million in sales. Thus, Defendants purposefully derived and invoked the benefits from their interstate activities in California. See Burger King Corp., 471 U.S. at 474.

### 2.    Arising Out Of

As to the second factor, the Ninth Circuit adopted the "but for" test to determine the "arising out of" requirement. Gray, 913 F.2d at 761 (citing Shute, 897 F.2d at 385-86). In this case, if Defendants had not entered into the oral agreement, Plaintiff would

not have been injured by being deprived of the benefit of its bargain having paid Defendants the sum of $1,259,284.42 pursuant to the oral contract.  In other words, the causes of action in the complaint arise from the oral agreement made in Oceanside, California.

### 3.  Reasonableness

Finally, as to whether the exercise of jurisdiction comports with fair play and substantial justice, if defendant has purposefully directed its activities in California, then "personal jurisdiction is presumptively reasonable." Sher, 911 F.2d at 1364.  The burden is on Defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id. (quoting Burger King Corp., 471 U.S. at 477.)

The Ninth Circuit considers seven factors to determine whether the exercise of jurisdiction is reasonable and they are:

> (1) the extent of the [defendant's] purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternate forum.

Panavision Internat'l, LP v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998).  The court must balance all seven factors and not one is dispositive. Id.

The Court has already concluded that Defendants purposefully availed themselves to the benefits of doing business in California, which weighs in favor of Plaintiff.  On the second factor, Defendants argue that defending the action in California places a significant burden on them as they would need to be away from Mexicali for an extended period of time and the cost of travel to California would be sizeable.  However, whether trial occurs in Mexico or California, Defendants would need to be away from their business in either forum.  Also, it appears that Defendants' representatives routinely cross the border to attend to business in California.  Finally, Mexicali is a capital city of Baja California and borders California, and not far from

[16cv539-GPC(BLM)]

San Diego.  See Sher, 911 F.2d at 1365 (requiring defendants to defend itself in California when they were located in Florida was not unreasonable as to violate due process.)  The burden on Defendants of defending in California would not be great.

As to the third factor, the extent of conflict with the sovereignty of the defendant's state, the Ninth Circuit has stated that litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist. FDIC v. British–American Ins. Co., 828 F.2d 1439, 1444 (9th Cir. 1987) (California jurisdiction over foreign defendant unreasonable although an employee of a foreign defendant's subsidiary signed the contract and deposited money for wire-transfer in California).  Here, the salient facts do not clearly support either side on this factor.

On the fourth factor, both forums have an interest in the litigation.  Mexico has an interest in adjudicating the issues concerning home businesses while California has an interest in protecting its residents who suffer damages as a result of foreign corporation's actions.  But see Floyd J. Harkness Co., Inc. v. Amezcua, 60 Cal. App. 3d 687, 693 (1976) (jurisdiction over a Mexican defendant was unreasonable because the forum state had little interest in the outcome of a dispute over performance under a contract).

Given the ongoing litigation regarding the underlying Agricola debt in Mexico, the fifth factor, the most efficient judicial resolution of the controversy, and the seventh factor, the existence of an alternate forum, support Defendants.  As to the sixth factor, Plaintiff's choice of forum demonstrates the importance of the California forum to the Plaintiff.

The seventh factor, existence of adequate alternate forum, is the most vigorously disputed issue relating to the reasonableness inquiry.  Plaintiff contends that Mexico is not an adequate alternate forum because Plaintiff and Gowan Semillas are not parties in that case and the Mexico case will not address all the issues involved in the current action concerning the rights and obligation between Plaintiff and Gowan Semillas.

Defendants argue that Mexico is the appropriate forum and that court can address Plaintiff's claims.  In fact, the defendants in the Mexico case have asserted as a defense that the debt owed to the plaintiff in the Mexico case, Dune Mexicali, has been assumed by Fresh Pac.  (Dkt. No. 8-2, Gonzalez Decl. ¶ 7.)

The case in Mexico concerns the debt between Dune Mexicali and Agricola Colonet.  Counsel for Dune Mexicali in the matter of <u>Dune Mexicali vs. Agricola Colonet, et al.</u> states that the case is currently pending and is in the proof stage with no trial date set in the Court of the United Mexican States, State of Baja California, Mexicali judicial branch.  (Dkt. No. 8-2, Gonzalez Decl. ¶¶ 3, 6.)  "A precautionary action was previously initiated in the State of Jalisco which involved Dune Mexicali's efforts to hold the defendants individually liable for the debt of Agricola Colonet." (<u>Id.</u>)  "It resulted in an interlocutory judgment entered in favor of Dune Mexicali." (<u>Id.</u>) Then that action was combined with the case in Mexicali for handling.  <u>Id.</u>  In the Mexico case, Plaintiff is Dune Mexicali and Defendants are Agricola Colonet; Agricola Ocean, S.A. de C.V. ("Agricola Ocean"); Grupo Agricola Ejidal Hermanos Silva, S.P.R. de R.L.; Jay Mitchell Kawano and Arnulfo Silva Martinez. (<u>Id.</u> ¶ 5.)  According to Gonzalez, Dune Mexicali obtained an interlocutory judgment that holds Jay Mitchell Kawano and Arnulfo Silva Martinez individually liable for the debt of Agricola Colonet. (<u>Id.</u> ¶ 6.) Gonzalez states that Kawano and Silva are partners and jointly own Agricola Colonet and Agricola Ocean.  (<u>Id.</u>)

In response, Agricola Colonet's attorney states that Gowan Semillas and Fresh Pac are not parties to the Mexico action.  (Dkt. No. 11-2, Padilla Decl. ¶ 2.)  He explained that Dune Mexicali obtained an "interlocutory order consisting of a preventative injunction to secure authority over certain assets located in Mexico of Agricola, its principals and other entities."  (<u>Id.</u> ¶ 3.)  According to Padilla, no Mexican court has determined that assets can be used to satisfy the alleged debt of Agricola or that the individuals/entitles which own the assets are liable for the Agrigola debt.  (<u>Id.</u>)  The interlocutory order is not a final determination or judgment on Dune

Mexicali's claim for damages.  (Id.)  He states that there has been no judgment that Kawano is individually liable for Agricola's debt.  (Id.)  In a declaration, Kawano also states that he, individually, and Fresh Pac are not named as a defendant in the Mexican litigation.  (Dkt. No. 11-1, Kawano Decl. ¶ 25.)  He states he has not held any ownership interest in Agricola Colonet for over 12 years.  (Id. ¶ 26.)  Kawano states he sold his shares in Agricola Colonet to Arnulfo Silva in 2004 and attaches as Exhibit 1[4] a document evidencing the transfer of his shares.  (Id. ¶ 2.; id., Ex. 1.)

While there are a couple of conflicts between the parties that must be resolved in favor of Plaintiff, see Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004) ("[c]onflicts between parties over statements in affidavits must be resolved in the plaintiff's favor"), it is not disputed that the Mexican lawsuit seeks the collection of an alleged unpaid debt that Agricola Colonet owes to Dune Mexicali for fertilizer it purchased from Dune Mexicali.  (Dkt. No. 8-2, Gonzalez Decl. ¶ 4; Dkt. No. 11-2, Padilla Decl. ¶ 2.)  It is also not disputed that the defendants in the Mexican case have asserted, as a defense, that the debt owed to the plaintiff, Dune Mexicali, has been assumed by Fresh Pac.  It is also not disputed that the debt owed by Agricola Colonet to Dune Mexicali for fertilizer it purchased in the Mexico case is related to the debt that is subject to the alleged oral agreement in the instant case.  While Kawano states he has not been sued in his individual capacity in the Mexico case, he does not state that he has no involvement in that case, and that he has no ownership interest in Agricola Ocean.

Defendants' attorney in the Mexico litigation states that there may arise a conflict if the Mexico court adjudicates the debt of Agricola Colonet and Dune Mexicali which could end in inconsistent results if this case proceeds.  The Court agrees.  The central issue in this case, the alleged oral agreement where Plaintiff agreed to assume the debt of Agricola Colonet is relevant to the case in Mexico where the there is an underlying agreement between Agricola Colonet and Dune Mexicali for the

---

[4]Exhibit 1 is written in Spanish and no English translation has been provided.

[16cv539-GPC(BLM)]

purchase of fertilizer and Agricola Colonet is asserting that Fresh Pac has assumed its debt.  While Fresh Pac and Gowan Semillas are not currently parties to the case, Gowan Semillas and Dune Mexicali share common ownership and/or officers, (Dkt. No. 1, Compl. ¶ 6), and are lumped together as "Defendants" in the Complaint. Morever, Plaintiff may file suit in Mexico and add Gowan Semillas as a defendant and have the cases consolidated with the Mexico litigation or join in the Mexico litigation. It would be inefficient for the parties and both courts to conduct duplicate discovery and briefing of legal issues that could result in inconsistent rulings.  There already exists an alternate forum addressing issues related to this case.  Therefore, these factors favor Defendants.

In considering all the factors, the Court concludes that it would be unreasonable to exercise personal jurisdiction over Defendants based on the fifth and seventh factors due to the pending litigation in Mexico that is addressing the underlying debt between Agricola Colonet and Dune Mexicali upon which the oral agreement is based on.  Thus, the Court concludes that it does not have specific personal jurisdiction over Defendants.  Even if the Court had personal jurisdiction over Defendants, the case should also be dismissed based on forum non conveniens.

**D.     Forum Non Conveniens**

Defendants argue that the case should be dismissed based on the previously filed Mexico action which presents a more convenient forum.  Plaintiff oppose contending that there is no compelling reason to dismiss the action based on forum non conveniens.

The doctrine of forum non conveniens grants discretion to district courts to dismiss an action where "a court abroad is the more appropriate and convenient forum for adjudicating the controversy." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 425 (2007) (holding that a district court has discretion to respond to a forum non conveniens challenge and need not take up any other threshold objection such as establishing its own jurisdiction).

"In dismissing an action on forum non conveniens grounds, the court must examine: (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142 (9th Cir. 2001) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n. 22, 257 (1981)).  A domestic plaintiff's choice of forum is entitled to a strong presumption of deference "which ordinarily will not be disturbed unless the private and public interest factors strongly favor trial in the foreign forum." Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1118 (9th Cir. 2002); Ceramic Corp. of America v. Inka Maritime Corp. Inc., 1 F.3d 947, 949 (9th Cir. 1993) (citation omitted) ("This showing must overcome the 'great deference . . . due plaintiffs because a showing of convenience by a party who has sued in his home forum will usually outweigh the inconvenience the defendant may have shown.'").  However,  "[a] citizen's forum choice should not be given dispositive weight . . . if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." Piper Aircraft, 454 U.S. at 256 n. 23.

"[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." Id. at 255; Gulf Oil, 330 U.S. at 509.  The presumption in favor of the plaintiff's choice of forum may be rebutted through a clear showing of facts which either: "(1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems." Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947); Cheng v. Boeing Co., 708 F.2d 1406, 1410 (9th Cir. 1983).  The presumption can be rebutted by analyzing  the "private" and "public" interest factors. Van Schijndel v. Boeing Co., 434 F. Supp. 2d 766, 774 (C.D. Cal. 2006).

///

### 1. Adequate Alternative Forum

The defendant bears the burden to demonstrate the existence of an adequate alternative forum exist. <u>Dole Food Co.</u>, 303 F.3d at 1118.  In the Ninth Circuit, the key issue is whether 'the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all.'. . . . This requirement is generally satisfied if the defendant is amenable to service of process in the alternative forum . . . ." <u>Creative Tech. v. Aztech Sys. Pte</u>, 61 F.3d 696, 701 (9th Cir. 1995) (quoting <u>Piper Aircraft Co.</u>, 454 U.S. at 254 & n. 11).

Here, Defendants argue that Mexico is an adequate alternative forum as there is already a suit pending there that involves the central issue in this case which is the debt owed by Agricola Colonet and where it is asserting the Plaintiff has assumed Agricola Colonet's debt. Plaintiff responds that the oral contract was entered into and substantially performed in California, and Mexico would not have a strong interest in applying California law or comfortable in applying California law.

While not explicit, Defendants impliedly assert that they are amenable to service in Mexico as they allege that this case would proceed more expeditiously and inexpensively if it were tried in Mexico and that while Plaintiff argues it is not currently a party to the Mexico action, Defendants state that "it should and can be." (Dkt. No. 8-1 at 17-18; Dkt. No. 15 at 10[5].)

Plaintiff does not dispute that Mexico can provide a remedy for breach of an oral contract but without legal or factual support argues that there is no suggestion by Defendants that Mexico law would apply to the California verbal contract or that Mexico would have a strong interest or would be comfortable in applying California law.  The Court concludes that Mexico is an adequate alternate forum and Defendants have met their burden.  Next, the Court considers the private and public factors to determine if the presumption in favor of Plaintiff's choice of forum can be rebutted.
///

[5]Page numbers are based on the CM/ECF pagination.

**2.     Private Interest Factors**

Private interest factors include the following,

> (1) the residence of the parties and the witnesses;
> (2) the forum's convenience to the litigants;
> (3) access to physical evidence and other sources of proof;
> (4) whether unwilling witnesses can be compelled to testify;
> (5) the cost of bringing witnesses to trial;
> (6) the enforceability of the judgment; and
> (7) 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'

Lueck v. Sunstrand Corp., 236 F.3d 1137, 1145 (9th Cir. 2001) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

First, as to the residence of parties, Fresh Pac is a California corporation with its principal place of business in Oceanside, CA, and Defendants are both Mexican corporations formed and existing under the laws of Mexico. As to witnesses, Kawano, Plaintiff's President, is located in California while Llaguno and Castillo, Llaguno's successor, worked primarily out of the Mexicali office. In addition, Kawano believes that Mark Jesson and Slocum reside in California.[6] (Dkt. No. 11-1, Kawano Decl. ¶¶ 14, 21.) This factor does not favor one party over the other as the key parties and witnesses reside in both forums.

The forum's convenience to the parties and the location of physical evidence are neutral factors. Defendants make summary arguments that the private interest factors favor dismissal but do not argue that litigation in this forum would be inconvenient to the parties. While Plaintiff agues that evidence of payments pursuant to the oral agreement are in Plaintiff's possession in Oceanside, it would appear that documents as to the sales made between Plaintiff and Defendants would also be in Defendants' possession in Mexico. See Lockman Fdn. V. Evangelical Alliance Mission, 930 F.2d 764, 769-70 (9th Cir. 1991) (district court properly considered how sources of proof related to not only plaintiff case in chief but also defendant's defense).

---

[6] While Defendants object to the admissibility of Kawano's declaration because it is based on "information an belief", they do not submit a declaration challenging that Jesson and Slocum live or reside in California.

[16cv539-GPC(BLM)]

1    Next, compulsory process for attendance in the United States is also a neutral
2    factor.  On this factor, the court should look at whether witnesses would be unwilling
3    to testify and the cost of obtaining attendance of willing witnesses.  <u>Carijano v.</u>
4    <u>Occidental Petroleum Corp.</u>, 643 F.3d 1216, 1231 (9th Cir. 2011).  Here, no party has
5    alleged or demonstrated that witnesses would be unwilling to attend, and the cost of
6    obtaining attendance of witnesses would be the same in either locations as there are
7    about the same number of witnesses that reside in Mexico and California.

8    Neither party has addressed the enforceability of the judgment factor or argued
9    that there would be any problems enforcing a judgment in either California or Mexico,
10   and therefore this factor is also neutral.[7]  <u>See</u> <u>Boston Telecomm'ns Group, Inc. v.</u>
11   <u>Wood</u>, 588 F.3d 1201, 1210 (9th Cir. 2009) (because neither party argued that there
12   would be any problems in enforcing a judgment in either forum, the district court
13   properly concluded that this factor was neutral).

14   While the above factors do not rebut the strong presumption in favor of
15   Plaintiff's choice of forum, the Court concludes that the last factor, other practical
16   considerations, such as efficiency and avoiding duplicate cases, weigh in favor of
17   Defendants.  "Actions pending in a foreign forum should be taken into account by
18   courts, as the doctrine of forum non conveniens was designed in part to avoid these
19   inconveniences."  <u>Van Schijndel v. Boeing Co.</u>, 434 F. Supp. 2d 766, 780 (C.D. Cal.
20   2006) (noting that two proceedings investigating the facts would be inefficient and the
21   foreign court will be addressing these issues in any event).  Policy of an expeditious
22   trial weighs in favor of dismissal to litigate in a foreign forum because it would avoid
23   fragmented litigation.  <u>See</u> <u>Lockman Fdn.</u>, 930 F.2d at 770 (noting two cases in forums
24   were related because of the defendant's anticipated defense).

25   Here, the Mexico litigation is currently in its discovery stage and no trial has

26

27        [7]Defendants summarily state that any judgment would require "domestication"
     which would need to be enforced in Mexico and argue that if Plaintiff is successful on
28   its claims, it would still end up in litigation in Mexico.  However, Defendants do not
     explain the process of domestication and whether domestication would inhibit
     enforcement of a judgment in California.

[16cv539-GPC(BLM)]

been set.  The Mexico case addresses the underlying debt between Agricola Colonet and Dune Mexicali which is the reason why the oral agreement between Fresh Pac and Defendants was formed.  Agricola Colonet has raised as a defense that the debt owed to Dune Mexicali has been assumed by Fresh Pac.  Therefore, the Mexico court will be addressing the factual and legal issues related to the oral agreement between Fresh Pac and Dune Mexicali.  While Gowan Semillas and Fresh Pac are not parties to the Mexico action, they can seek to join in the Mexico action.  See id. (noting that plaintiff could litigate its action in Japan by filing a counterclaim against the defendants).

Next, the public interest factors are: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum."  Boston Telecomms., 588 F.3d at 1211 (quoting Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1181 (9th Cir. 2006)).  The first factor requires the Court to "ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest."  Id.  Here, California has an interest in protecting its corporations.  See Dole Food Co., Inc., 303 F.3d at 1119.

Plaintiffs argue that California law would apply since the oral contract was formed in California. Defendants do not assert which law applies to this case but argue that the alleged breach occurred when Dune Mexicali filed its collection action against Agricola in Mexico and without support, argue that conflict of law principles do not favor keeping the case in San Diego.  Defendants do not argue that Mexican law would apply.

In a diversity case, the district court must apply the choice-of-law rules of the state in which it sits, which is California.  Abogados v. AT&T, Inc., 223 F.3d 932, 934 (9th Cir. 2000).  To determine which applicable law applies to the contract claim requires a choice of law analysis under California's "governmental interest" approach.  See Arno v. Club Med Inc., 22 F.3d 1464, 1467 (9th Cir. 1994).  However, the Court

1   need not engage in a full choice of law analysis at this stage.[8]  See Piper Aircraft, 454

2   U.S. at 251 ("The doctrine of forum non conveniens . . . is designed in part to help

3   courts avoid conducting complex exercises in comparative law.").  This factor favors

4   dismissal if the court would be required to "untangle problems in conflict of laws, and

5   in law foreign to itself."  Id.  If the Court were required to apply the law of Mexico,

6   which is foreign, it weighs in favor of dismissal.  See id.; Leetsch v. Freedman, 260

7   F.3d 1100, 1105 (9th Cir. 2001) (explaining that the district court's lack of familiarity

8   with German law "weighs especially heavily in favor of the German courts.  Not only

9   is the district court unfamiliar with German law, were it to hear the case it would be

10  required to translate a great deal of that law from the German language, with all the

11  inaccuracy and delay that such a project would necessarily entail.").

12      Here, the parties have not conducted a meaningful choice of law analysis, and

13  the Court need not conduct a choice of law analysis.  It does not appear that Defendants

14  dispute that California law would apply to the oral agreement formed in California.

15  The complaint alleges California state law causes of action and this Court would be the

16  most appropriate forum to apply California law; however, issues underlying the

17  agreement between Agricola Colonet and Dune Mexicali would involve Mexican law

18  which this Court is not familiar with. It is not clear whether the agreement between

19  Agricola Colonet and Dune Mexicali would be relevant to the issues in this case. This

20  factor weights slightly in favor of Plaintiff.

21      Next, no evidence is provided as to the relative court congestion in Mexico and

22  in California. The last factor, the costs of resolving a dispute unrelated to a particular

23  form, is neutral as the dispute relates to both forums.  In sum, the public factors do not

24  support dismissal of the case.

25  _____

26      [8]A district court is required to conduct a choice of law analysis when a statute, such as the Jones Act requires venue in the United States or the parties have agreed to

27  a chosen law to apply.  See Creative Tech. Ltd. v. Aztech System Pte., Ltd., 61 F.3d 696, 700 (9th Cir. 1995); Magellan Real Estate Inv. Trust v. Losch, 109 F. Supp. 2d

28  1144, 1149 (D. Az. 2000). If no such applicable law is appropriate, then choice of law is given less deference on a forum non conveniens analysis.  Lockman Fdn. v. Evangelical Alliance Mission, 930 F.2d 764, 771 (9th Cir. 1991).

1    In analyzing both the private and public factors, the Court concludes that the

2    private factors weigh strongly in support of dismissal and rebut the presumption of

3    Plaintiff's choice of forum.  Accordingly, the Court GRANTS Defendants' motion to

4    dismiss based on forum non conveniens.

5    **E.    Defendants' Evidentiary Objections**

6        Defendants object to the declaration of Jay Kawano because he declares "under

7    the penalty of perjury under the laws of the State of California." (Dkt. No. 12-2 at 2.)

8    28 U.S.C. § 1746 provides that a declarant executing an affidavit within the United

9    States state "I declare (or certify, verify, or state) under the penalty of perjury that the

10   foregoing is true and correct", 28 U.S.C. § 1746, without limitation to the state laws of

11   his residence.  Here, Kawano declares "under the penalty of perjury under the laws of

12   the State of California that the foregoing is true and correct." (Dkt. No. 11-1 at 12.)

13   However, 28 U.S.C. § 1746 requires only substantial compliance with the statute's

14   preferred phrasing.  See Commodity Futures Trading Comm'n v. Topworth Intern.,

15   Ltd., 205 F.3d 1107, 1112 (9th Cir. 1999) (concluding that the perjury statement must

16   be substantially compliant with the statute); Slaughter v. Stewart Enters., Inc., 2007

17   WL 2255221, at *2 (N.D. Cal. Aug, 3, 2007) (overruling defendants' objection that

18   declarations signed under penalty of perjury under the laws of the State of California

19   and not laws of the United States). Accordingly, Defendants' objection is overruled.

20       Defendants also object to Plaintiff's declarations because they are asserted

21   without personal knowledge and only on information and belief.  (Dkt. No. 12-2.)

22   Information and belief is sufficient to sustain a claim in a complaint as long as it is

23   supported with "a statement of the facts upon which the belief is based." Zatkin v.

24   Primuth, 551 F. Supp. 39, 42 (S.D. Cal. 1982) (concerning fraud allegations in

25   complaint).  Moreover, if only one party has presented facts by affidavit and the

26   opposing party has not presented an affidavit disputing those facts, the Court may

27   assume the truth of those allegations.  See Data Disc, Inc. V. Sys. Tech. Assocs., Inc.,

28   557 F.2d 1280, 1284 (9th Cir. 1977) (the court cannot assume the truth of allegations

in a pleading contradicted by a sworn affidavit).  Here, while Defendants object to the declarations submitted by Plaintiff, they have not submitted affidavits to challenge the statements in these declarations.   Accordingly, the Court overrules Defendants' objections.

### Conclusion

Based on the above, the Court GRANTS Defendants' motion to dismiss based on personal jurisdiction and on forum non conveniens and DISMISSES the Complaint. The hearing set for September 2, 2016 shall be **vacated.**

IT IS SO ORDERED.

DATED:  September 1, 2016

HON. GONZALO P. CURIEL
United States District Judge

[16cv539-GPC(BLM)]